IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**FRED TRICE TAYLOR,**
      **Petitioner,**

**v.**                          **Case No. 5:09cv239/RS/MD**

**WALTER A. MCNEIL,**
      **Respondent.**
_____

## REPORT AND RECOMMENDATION

**Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondent has filed a motion to dismiss the petition as time-barred, providing relevant portions of the state court record. (Doc. 17). Petitioner has responded in opposition to dismissal. (Doc. 19). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.**

## BACKGROUND AND PROCEDURAL HISTORY

**On July 6, 1978, petitioner was charged by Information filed in the Circuit Court of Bay County, Florida, as follows:**

> **On or about the 25th day of April, 1978, . . . FRED TICE TAYLOR, JR., did unlawfully by force, violence, assault or putting in fear, take certain property, to-wit: money, the property of Mary R. Smith as owner**

or custodian, from the person or custody of Mary R. Smith, and in the course of committing said Robbery, carried <u>a deadly weapon</u>, to-wit: <u>a knife</u>, in violation of Florida Statute 812.13 . . . .

(Doc. 17, Ex. B)[1] (emphasis added).  The sworn Complaint stated that petitioner robbed the victim "at knifepoint," that he "struck [the victim] several times in the face," and that he had given a written statement admitting his guilt.  (Ex. C).  On June 5, 1979, petitioner entered a counseled guilty plea to the charge.  On the Plea, Waiver and Consent form petitioner acknowledged, among other things, that he was charged with armed robbery in violation of § 812.13(2)(a), that he was guilty of the offense, that he had been advised of the nature of the charge against him, that the maximum penalty for the offense was "life imprisonment or a term of years not more than 30," that he was waiving his right to have a jury determine his guilt or innocence, and that he "robbed Mrs. Smith by pulling a knife on her and taking her money."  (Ex. D).  In exchange for petitioner's plea, the State dropped additional pending charges.  (*Id*.).

On June 5, 1979, the trial court accepted petitioner's plea, adjudicated him guilty of armed robbery with a deadly weapon in violation of Fla. Stat. § 812.13(2)(a), and sentenced him to life imprisonment.  (Exs. D, E).  Petitioner did not appeal from the judgment.  (Doc. 1, p. 2).

On April 12, 2004, petitioner filed a Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).  (Ex. G, pp. 1-6).  Prior to the trial court ruling on the motion, petitioner filed a notice of appeal to the Florida First District Court of Appeal ("First DCA").  (*Id*., pp. 7-8).  The First DCA ordered petitioner to file a copy of the order from which he was appealing.  (Ex. H).  Petitioner filed nothing, and on August 20, 2004 the First DCA dismissed the appeal.  (Ex. I).  The mandate  issued on September 15, 2004.  (Ex. J).

---

[1] Hereafter, all references to exhibits are to those provided at Doc. 17, unless otherwise noted.

On September 16, 2004, petitioner filed another Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). (Ex. K). He filed a notice of voluntary dismissal on October 14, 2004. (Ex. L). On October 26, 2004, the trial court dismissed the motion pursuant to petitioner's voluntary dismissal. (Ex. M).

On October 8, 2007, petitioner filed a Motion to Correct Sentencing Error pursuant to Florida Rule of Criminal Procedure 3.800(a). (Ex. N). The trial court denied the motion on December 6, 2007. (Ex. Q).

On January 19, 2008, petitioner filed a petition for writ of habeas corpus in the trial court. (Ex. R). The trial court dismissed the petition on February 4, 2008. (Ex. S). The dismissal was without prejudice to petitioner filing a facially sufficient motion for postconviction relief.

On March 18, 2008, petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Ex. T, pp. 1-6). The motion was denied on September 10, 2008. (Id., pp. 25-26). The First DCA affirmed without written opinion on April 13, 2009. (Ex. U). Petitioner's motion for rehearing was denied on May 20, 2009. (Doc. 1, p. 3-B).

Petitioner filed the instant federal habeas petition on June 30, 2009. (Doc. 1, p. 1).

## DISCUSSION

Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

**(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;**

**(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or**

**(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.**

§ 2244(d)(1).  According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state postconviction or other collateral review is pending shall not be counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).

In the instant case, petitioner has not asserted that a government-created impediment to his filing existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his conviction became final.  Thus, the statute of limitations must be measured from the remaining trigger, which is the date on which his conviction became final.  *See* 28 U.S.C. § 2244(d)(1).

Because petitioner's judgment of conviction became final in 1979,[2] before the AEDPA became effective, the one-year limitations period began to run from April 24, 1996, the AEDPA's effective date.  *See Carey v. Saffold*, 536 U.S. 214, 217, 122 S.Ct.

---

[2]*See Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) (holding that where petitioner did not seek direct review of his judgment of conviction or sentence, his judgment of conviction (entered upon his guilty plea) became "final" for purposes of § 2244 on the date his 30-day right to appeal expired); *Walk v. State*, 707 So.2d 933 (Fla. Dist. Ct. App. 1998) (holding that if "a conviction and sentence are not appealed, they become final 30 days after they are entered."); *Gust v. State*, 535 So.2d 642 (Fla. Dist. Ct. App. 1988) (holding that if defendant does not appeal the conviction or sentence, judgment of conviction and sentence become final when the 30-day period for filing a direct appeal expires).

2134, 2137, 153 L.Ed.2d 260 (2002). The statute of limitations expired one year later, unless there were pending during that time any properly filed applications for state postconviction or other collateral review. The record reveals that petitioner had no properly filed applications for state postconviction or other collateral review pending during that critical period between April 24, 1996 and April 24, 1997; therefore, his time for seeking federal habeas review expired on the latter date. The instant habeas petition filed on June 30, 2009 is untimely, a point petitioner concedes. (Doc. 1, p. 4F). Petitioner argues that the court should review his petition despite its untimeliness, because it raises a claim of actual innocence with regard to his sentence. (Doc. 1, pp. 4E-4F; Doc. 19).

Petitioner's habeas petition raises one claim: that petitioner's sentence violates the Fourteenth and Eighth Amendments because "petitioner was sentenced for carrying a deadly weapon during a robbery, but the alleged deadly weapon is exempt from the weapon statute." (*Id.*, pp. 4-4A). As support for his claim, petitioner acknowledges all of the facts outlined above. His claim of "actual innocence" is based on an affidavit he executed on January 19, 2008, in which he states: "The alleged deadly weapon that I carried during the robbery was a common pocketknife, which contained a folding blade measuring less than four inches, better known as a K-bar pocketknife." (Doc. 1, "Appendix D"). He argues that because a "common pocketknife" is excluded from the definition of weapon in Fla. Stat. § 790.001(13), his knife was neither a deadly weapon nor a weapon, and the only lawful sentence he could receive was a maximum of fifteen years imprisonment for simple robbery, a term he has already served. (Doc. 1, pp. 4A-4B; Doc. 19).

Neither the Supreme Court nor the Eleventh Circuit has ever held that the Constitution requires an actual innocence exception to the AEDPA's one-year limitations period. *Melson v. Allen*, 548 F.3d 993, 1002 (11th Cir. 2008). However, assuming without deciding that such an exception exists, a "petitioner must first make a sufficient showing of actual innocence." *Id.* "This requires the petitioner to

produce new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* (quotation omitted). To meet the "threshold showing of innocence" justifying "a review of the merits of the constitutional claims," the new evidence must raise "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Schlup v. Delo*, 513 U.S. 298, 317, 115 S.Ct. 851, 862, 130 L.Ed.2d 808 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

At the time of petitioner's guilty plea and conviction in 1979, the offense of armed robbery with a deadly weapon was defined in § 812.13(2)(a), Florida Statutes, as follows:

> (1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

> (2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.

The statute did not define "deadly weapon." Florida Statutes section 790.001(13) defined "weapon" for purposes of possession offenses as "any dirk, metallic knuckles, slingshot, billie, tear gas gun, chemical weapon or device, or any other deadly weapon except a firearm or common pocket knife." Fla. Stat. § 790.001(13) (1979). It did not define "common pocketknife" or indicate what constituted such a knife. The decisional law of Florida in 1979 concluded that for purposes of offenses where a pocketknife was <u>used</u> as opposed to merely <u>possessed</u>, a pocketknife could be a deadly weapon. *State v. Nixon*, 295 So.2d 121, 122 (Fla. 3d DCA 1974). As the court in *Nixon* explained:

Obviously the legislature, by excepting common pocket knives from the category of weapons, the carrying of which would be a crime, did so in order that the carrying of a common pocket knife by a citizen should not constitute a crime, in view of the general custom of people to carry such knives for convenience and useful purposes unrelated to any criminal intent or activity.

But that does not mean that a pocket knife cannot be a deadly weapon. Whether an object used as a weapon in an assault [or other violent crime] is a deadly weapon is a factual question to be resolved by the finder of facts at trial, (*Bass v. State*, Fla. App. 1970, 232 So.2d 25), and is to be determined upon consideration of its likelihood to produce death or great bodily injury. *Dey v. State*, Fla. App.1966, 182 So.2d 266; *Forchion v. State*, Fla. App.1968, 214 So.2d 751. It is common knowledge that in certain circles pocket knives are used by assailants with deadly weapon effect as frequently, if not more frequently than are firearms.

*Nixon* at 122; *see also, e.g., McCray v. State*, 358 So.2d 615, 617 (Fla. 1st DCA 1978) (reviewing conviction for robbery while carrying a weapon and holding that because a cigarette lighter is not one of the devices enumerated in § 790.001(13), it is not a "weapon" unless it is classifiable as a "deadly weapon;" a device may be classified as a "deadly weapon" if, "by its use or threatened use, death or great bodily harm is likely to be produced . . . ."); *Goswick v. State*, 143 So.2d 817, 820 (Fla. 1962) ("A 'deadly weapon' has generally been defined to be one likely to produce death or great bodily injury."), *receded from on other grounds, State v. Smith*, 240 So.2d 807 (Fla. 1970). Whether a particular device is classed as a "deadly weapon" is a factual question. *Nixon* at 122; *Goswick* at 820 ("Whether or not the weapon involved is to be classed as 'deadly' is a factual question to be resolved by the jury under appropriate instructions."); *Bass v. State*, 232 So.2d 25, 27 (Fla. 1st DCA 1970) (same) (citing *Goswick*); *Austin v. State*, 336 So.2d 480, 481 (Fla. 2d DCA 1976) (same) (citing *Goswick*). Thus, at the time of petitioner's conviction Florida courts had concluded that a pocketknife could be classed as a deadly weapon, and that the determination of whether it was a "deadly weapon" or an exempted "common

pocketknife" was a question of fact for a properly instructed jury, not a pure question of law.

In light of the foregoing, to the extent petitioner argues that due to the newly alleged characteristics of the knife used in the robbery, the knife must be classed as a "common pocketknife" as a matter of law, he is mistaken. That was not the state of the law at the time of his conviction. Under both the statute and the decisional law, such a knife could have been classed a "deadly weapon."

To the extent petitioner argues that his new allegations demonstrate that the knife could not be classed as a deadly weapon, he again is mistaken. Even assuming, without deciding, that the characteristics of the knife are as petitioner alleges (a pocketknife which contained a folding blade measuring less than four inches), those facts fail to raise a reasonable doubt about petitioner's guilt, *i.e.*, that he used the knife with deadly weapon effect. By confessing his guilt, petitioner admitted all the elements of the offense and all the allegations necessary to be proved for conviction. One of those facts was that the knife (or "pocketknife" as petitioner now calls it) which petitioner pulled on the victim in the course of robbing her, was a deadly weapon – that by its use or threatened use, it was likely to produce death or great bodily harm. Petitioner's allegations fail to state a colorable claim of "actual innocence" under the *Schlup* standard.

## CONCLUSION

The instant petition for writ of habeas corpus is untimely. Petitioner has not established entitlement to equitable tolling or any other exception to the limitations period. The factual allegation underpinning his claim of actual innocence – that the knife he pulled on the victim to force the victim to give him her money "contained a folding blade measuring less than four inches, better known as a K-bar pocketknife" – does not raise a colorable claim that petitioner is actually innocent

of or ineligible for, either an adjudication of guilt or the sentence imposed. Therefore, the petition should be dismissed.

## CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That respondent's motion to dismiss (doc. 17) be GRANTED.

2. That the petition for writ of habeas corpus (doc. 1) challenging the conviction and sentence in *State of Florida v. Fred Trice Taylor, Jr.*, in the Circuit Court of Bay County, Florida, case number 78-204, be DISMISSED WITH PREJUDICE.

3.  **That the clerk be directed to close the file.**

4.  **That a certificate of appealability be DENIED.**

**At Pensacola, Florida this 16th day of April, 2010.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:09cv239/RS/MD*